Incorporated, 2009-15-41. We will be ready when you are, Mr. Bobl. This is about an exceptional case, right? It is, Your Honor. Or an arguably exceptional case. We think it's exceptional. You may have pleased the Court. Thank you, Nicholas Babel, for appellant Hysitron. Many of the factors that this Court has recognized as supporting a finding of exceptional case are present in this case. Baseless and frivolous infringement allegation, service of multiple deficient claim charts indicating… The District Court didn't agree with you on any of this. The District Court… How can it be baseless if indeed the patent specification itself incorporated an embodiment that was consistent with the rejected claim construction? The embodiment isn't really an embodiment at all. It's set forth at the very end of the specification. But it's there. And so the public saw notice that at least the inventor perceived that as a part of his claimed invention. And now, of course, the Court has found otherwise, but doesn't that at least make this a worthy matter for Court inquiry? I think the way to look at it is to, again, look at Column 4 of that specification. The paragraph begins with certain modifications that can be made to the system, and then it lists a couple. And then one of them is in yet another embodiment. There really isn't any notice that this is something that the inventor would have claimed as the invention. This is more something advising those of skill in the art who might read the patent that this is an embodiment that you can make to modify what's really the invention. This Court's case law is replete with admonitions that it's the specification, stupid. That's the way you tell what the claims mean. You read it in light of. And indeed, the specification becomes the central focus of all claim construction. It seems to me like we can't dismiss that at least they had an argument here that removed this from the baseless category. I think there are two quick responses to that. The first is that this Court's law is really crystal clear that you cannot infringe a specification. Infringement is determined and only determined by mapping the accused product to the asserted claim. The specification exists to teach and to interpret the language of the claim, but it all comes back to the language of the claim. And when you look at the language of the claim, it is, again, very clear that base is... It strikes me that that at least removes this case from the baseless category. As the District Court found, as the Magistrate Judge found, it seems like you're swimming upstream here. I accept that the Magistrate Judge and the District Court Judge recognized that there was at least enough here to advance to claim construction. Isn't your argument that a neighbor in this small, I assume small, Minnesota town could have sued you right down there, sued you a thousand miles away, with a strange claim construction, where you gave them an opinion of non-infringement? And isn't that your argument for an exception case? That is a big part of it. I thought so. The simple fact is that neighboring companies, a mile apart in Eden Prairie, Minnesota... But the court found no evidence of subjective bad faith, right? The court said that we didn't meet the clear and convincing evidence standard. Can you show us any case where a granted motion to remove is the basis for a finding of exceptional case? I'm not aware of any case where that specific... It doesn't seem like something of that procedural nature would be the grounds for an exceptional case finding. Certainly not by itself, but this court has advised in numerous cases. It's even one item that was asserted by the defendant in the Brooks Furniture case. Can you point to any case, any one of our cases, which reversed a district court judge for finding a case not exceptional? Well, there are a number of cases where a district court has been... A finding of exceptionality has been reversed and remanded. But I'm not aware of any case where, in the absence of, say, a remand necessary for willful infringement, where the absence of an exceptional case has been reversed by this court. I can give you the answer to that. There are none. We weren't able to find one. This would be the first time that you're asking for a reversal on the basis of a standard which is very hard to overcome, standard of review? We understand that, Your Honor. One of the key points here, and this is just as important as everything we've discussed so far, is one of the reasons we know that this case was brought in bad faith is the fact that after filing the lawsuit again in California against their neighbor, cases get remanded or transferred to the District of Minnesota. Eleven months after the case is filed, with the allegation of willful infringement, the court finally requires MTS to really lay its cards on the table, to finally say clearly what is the infringement allegation in the form of a claim charge. MTS could not do it. They could not articulate a coherent infringement theory. And this really is how we know that MTS's basis was really this bad faith comparison of this yet another embodiment in the specification to the Heisel-Tron device, rather than mapping the claims of the 124 patent to the Heisel-Tron device. It wasn't until the service of the third and fourth claim charges, and again only after being challenged by Heisel-Tron in a Rule 37 motion to dismiss and a motion to stay. Are we going to hear from Mr. Pearson in a minute that you are subject to a frivolous appeal and they deserve the fee reversal? In light of the fact you can't show us any Federal Circuit case supporting your position, why isn't your position more frivolous than theirs? Simply because something has not happened doesn't mean that it is not available. In this case, there is a clearly erroneous standard of review, and we think it's satisfied, and we believe that it is satisfied based on any number of facts, many of which are detailed in our memorandum. I also have another question relating to whether or not you challenge the magistrate's findings for applying the wrong legal theory. Is there any challenge to that at any time? The magistrate, as is quite clear from his opinion, applied the Brooks Furniture Standard, and in the objections to the magistrate's report and recommendation, the legal standard is laid out as an exceptional case may be found for litigation misconduct, vexatious tactics, or otherwise bad faith litigation. All of the factors in fair play. Exactly. And we think that that is enough of a statement of the proper legal standard, which is that you need to consider things like litigation misconduct, things like vexatious tactics, that it represents really a sufficient challenge to the application of Brooks Furniture. The application of Brooks Furniture raises one other of our concerns with the magistrate judge's order. When you look at the report and recommendation as adopted by the district court, when he discusses the district court's finding relating to MTS's motion to dismiss, where the district court specifically found that MTS had withheld highly relevant documents, made misrepresentations to the court and to Hyzatron, the magistrate judge simply glosses over the litigation misconduct aspect of it, the making of a misrepresentation to the court. And we think that that's emblematic of the application of the Brooks Furniture standard, where the magistrate judge simply was unwilling to examine the litigation misconduct portion of the motion to dismiss because he was applying the Brooks Furniture standard as opposed to the more general totality of the circumstances standard. Would you like to say the remainder of your time? I would, Your Honor. Okay, we'll do it. Mr. Pierson. Your Honors, may it please the court. In order to recover fees under Section 285, a party must demonstrate by clear and convincing evidence to the district court presiding over the case that indeed the case is exceptional and an award of fees is warranted. Here, an experienced magistrate judge and an experienced federal district court judge considered voluminous submissions, lengthy briefs, multiple submissions by the parties regarding whether or not this was an exceptional case. These judges were familiar with the case based on a prior motion to dismiss brought by Hyzatron, which was denied, and based on the court's involvement in the Markman hearing, which involved lengthy submissions and briefing and lengthy oral argument. These judges determined this was not a close case, not a close case, and indeed it isn't a close case. The lower court was correct on the law and it was correct on the facts. Of course, you lost in the merits. That doesn't necessarily mean it's an exceptional case. Indeed we did, Your Honor. Indeed we did, and may I suggest that what we have before the court today is an effort by a party successful at the Markman stage in seeking to bootstrap that success into a right to claim attorney's fees. That is not the law as this court has held on numerous occasions. What I would like to do today, time allotted to me, is discuss with the court three milestone events in the history of this case. The pre-suit investigation and the theory of infringement developed there, the motion to dismiss brought by Hyzatron, which was rejected by the lower court, and the Markman process in which substantial evidence was presented to the district court regarding our proposed interpretation of claims. But before I do that, I want to speak to one issue which Your Honor raised. That is, did they object to the standard applied by the magistrate judge when they objected to the R&R submitted by the magistrate judge to the federal district court judge? And the answer is no. If you read their objection, first of all, the magistrate judge got it right. The basis for recovery of fees in this case all along has been there was no viable theory of infringement. Bad faith litigation, ab initio, that was the theory. The magistrate articulated that theory correctly and applied the Brooks Furniture Standard correctly. When they objected to the R&R, they did not take issue with the Brooks Furniture Standard. To the contrary, in their objection to the R&R, Hisatron identified the Brooks Furniture Standard and said, we have to meet the two-pronged standard of Brooks Furniture. They laid out what the standard was, and then went on to try to demonstrate how they had met the subjective bad faith and objectively baseless standard. The district court judge, after reviewing the record in its entirety and having heard many of these arguments previously in conjunction with the Markman hearing, said, no, this is not an exceptional case. I don't find bad faith litigation in the part of the plaintiff in seeking to vindicate his patent rights. Let me then discuss, if I may with the court, the chronology of the case. The court is aware that in this case- You're not arguing that they waived that argument because the district court essentially reviewed every single issue that was presented at that point. So the waiver argument might be applicable, but not the way that it was handled by the district court. Yes, Your Honor. Our position is that they waived that argument in their objection to the R&R. Nevertheless, the district court has considered the alleged misconduct. The federal district court judge specifically considered the incident about which counsel spoke, an incident for which I take full responsibility as counsel for MTS, and the judge concluded that that was not a basis on which to find an award of attorney's fees. That incident came at the end of litigation. It had nothing to do with the commencement of the suit or the prosecution. Now, with respect to the first milestone event in the history of this case, MTS became aware of potential infringement by Hyzotron based upon the analysis of its application engineer, Jenny Hay. This court has held that in some instances that would be sufficient. MTS did not commence suit based on that analysis alone. The record is undisputed about this. MTS retained an experienced patent lawyer with one of the largest law firms in the country in California. Mr. Pearson, I hate to interrupt you. You've given us a roadmap for where you want to go, and I'm going to disrupt that a bit. But the area that caused me some concern was the failure to disclose the purchase agreement to Agilent. Can you tell us about that? I can, indeed. Contemporaneously with the issuance of the Markman order in late June 2008, my client, MTS, was involved in selling the MTS Nano Division to Agilent. And that sale was consummated on or about June 30, 2008. At that point in time, MTS had no financial interest in the outcome of the litigation. It didn't make the product, wasn't going to make the product, and it had transferred all right, title, and interest in this patent to Agilent. My job was to obtain dismissal of the action. I obtained from my client what I understood to be the relevant document, the Intellectual Property Transfer Agreement. The Intellectual Property Transfer Agreement did, in fact, transfer all right, title, and interest in the patent to Agilent. But didn't you retain rights to any recovery that would come? There was a separate document job. And in the purchase agreement, there was a carve-out, carving out this lawsuit. You are correct. At the time we brought the motion, and at the time I made these representations to the court in these briefings, I was unaware and did not have the purchase agreement. It was my mistake, my error. It's regrettable, and I am fully responsible for that error. The district court was not pleased. The district court chastised me for failing to provide that information. It was not an intentional mistake on my part. Having been a member of the Bar of the State of Minnesota and the Federal District Court for over 30 years, it was not a good day for me, Your Honor. But there was no intent on my part and no intent on my client's part to prolong this litigation. We wanted this litigation to end because we had sold the division that had invented the patent, making the product. We had no interest in the financial outcome of the case. We wanted to dispose of it. When I ascertained that there was a purchase agreement, which had different facts in it, we so apprised the district court. There was some additional briefing. The district court judge, who was conversant with all of these issues, considered this situation and concluded that it was not sufficient to justify an order of fees. It did not objectively change the outcome of the case. So it was considered and it was rejected. There is no basis here before this court to assign clear error to that determination. Patent counsel was obtained. Patent counsel met with representatives of Hyzotron. David Beckwith, right? Yes, sir. David Beckwith. I experienced patent counsel with the McDermott firm. Met with Hyzotron. Asked questions about their product. Obtained information about their product. Reviewed their clearance letter. In the clearance letter, they acknowledged in footnote 19, which is set forth in his declaration, they acknowledged that their product practiced a disclosed embodiment of our patent. Essentially, it was an admission. Not the usual kind of admission that you obtain when you meet with opposing counsel to discuss a patent infringement case. Mr. Beckwith developed a coherent and cogent theory of infringement based upon that disclosed embodiment and the terms of claim one of the patent. He sent them a letter prior to commencing lawsuit dated May 11, 2006. That letter is in the record. Advising them of his patent theory and advising them that they were going to commence suit. No response of any kind from Hyzotron to this theory of infringement. Subsequently then, the next milestone event was in the spring of 2007. Approximately one year later. At that point in time, Hyzotron had objected on several occasions to the sufficiency of the claims. I urge the court to review the decision of the magistrate judge, part of which is before the court, in denying the motion to dismiss Robert Hyzotron. That's at the docket, pacer docket, document 125. Certain portions of the order are before the court in the appendix. Hyzotron made the same arguments there that it's making today. There was no colorable claim of infringement. There was no theory of infringement, etc., etc., etc. Also raised questions about the sufficiency of the claim charge. All that was before the court. Let me talk about the claim charge. The theory of infringement in this case did not change. I can demonstrate that conclusively to the court by reference to several examples. Number one, David Beckwith's letter of May 11, 2006, describes the theory of infringement. A year later, in response to the motion to dismiss, Mr. Beckwith submitted a declaration in which he outlined once again the theory of infringement. The theory of infringement articulated pre-suit in May of 2006 is exactly the same as the theory of infringement articulated one year later in May of 2007 by the same lawyer, first in a letter, first in a declaration. Further evidence of this is the brief that was submitted by MTS in opposition, where we had described the basis for our infringement theory. That's docket to number 100 at pages 3-5 and 9-11. We described our infringement theory. The infringement theory which we presented to the court in May of 2007 is exactly the same infringement theory that Mr. Beckwith identified pre-suit in his letter. The theory didn't change. The theory didn't change at all. It was predicated on a disclosed embodiment of the invention which they would like to ignore. Now, the outcome of this hearing is particularly significant for the court's consideration. They made the same arguments then that they're making now. Bad faith litigation. You don't have a basis for this suit. The district court, the magistrate, considered these arguments, issued an opinion. Two salient points. He concluded, as a finding of fact, MTS conducted an investigation in good faith to, the magistrate concluded, the information provided to MTS was sufficient to permit a reasonable inference that the Hyzotron product infringed. That was the decision of the district court as of July 2nd, 2008. In essence, all these issues were put before the court and the court said go forth and litigate because you've conducted an investigation and based on the alternative disclosed embodiment and your proposed claim construction, you have a reasonable claim here. Hyzotron argues to this court that at that point in time we should have packed up our bags and gone home and dismissed the case. And that to continue with the litigation, notwithstanding the court's decision, was bad faith. That is not the law, nor should it be the law, when it comes to exceptional cases. Then we come to the marking here. We disagree with the outcome of that, of the marking claim construction process. Frankly, I think that the court may have erred in construing the claims as it did. Let me explain why. But it's not before us. That is not before you. Let me explain, if I may, as an alternative, Your Honor, why we had a good faith basis for the claim construction that we did. We predicated our claim construction and our theory of infringement on an alternative embodiment of the device. In that alternative embodiment, one specimen holder was mobile and the other specimen holder was fixed to what was referred to the frame of the device. But that's plainly contrary to the claim, which requires both specimens almost removed. With all due respect, Your Honor, I don't believe that's what the claim says. The claim talks about measuring displacement of a first specimen holder relative to the base. And that was the issue. What does that mean, relative to the base? Hyzotron suggested to the court, and argued to the court, a truncated version of the claim. They would put a period after measuring displacement of the first specimen holder and omit the rest of the claim language, the relative to language. And they argue that there's no possible way in which you could have an invention in which one specimen holder is mobile and one specimen holder is fixed to the base. But as we all know, this court has instructed us to look to the specification. And here we have a disclosed embodiment in which one specimen holder is in fact fixed and one is mobile. Now, this court has consistently stated that the claim terms should be construed in a manner to include all disclosed embodiments. Further, it is not appropriate to include... Or at least usually preferred embodiments. Indeed. Right. And it is not... All you have to do is cut back the claims in your excluded embodiments. Indeed. Here, at the urging of Hyzotron, the district court imported claim terms from the preferred embodiment. And by doing so, it excluded from the scope of the claims a disclosed embodiment in the patent, part of the claim dimension. If the court had followed what we believe are the dictates of the law and interpreted the patent to include the disclosed embodiment, the alternative embodiment, we would have won the case. In summary, we had a good faith basis for this case. It was hotly contested. We had a cogent, responsible, reasonable theory of infringement which was presented to the district court. There is no basis for reversing this decision. Thank you, Mr. Pearson. Mr. Babel, is it? Yes. There's a little rebuttal time. Thank you, Robert. A couple of responses to a few points that Mr. Pearson made. This idea, in connection with the motion to dismiss, that MTS, after learning about the asset purchase agreement under which MTS specifically reserved the right to sue Hyzotron for past infringement, that somehow they fell on their sword and admitted their mistake, really isn't supported. On October 9th, when MTS sent a letter to the court, and this is A1203, attaching the relevant portion of the asset purchase agreement, MTS states, as of June 27th, 2008, MTS had absolutely no economic or commercial interest in the 124 patent or any products made pursuant to the 124 patent. That is simply not true. MTS had the right to pursue Hyzotron for past infringement damages, meaning that this statement, under which MTS continued to seek dismissal without prejudice, knowing that they could have gone back out to the Northern District of California the next day and filed the same lawsuit. Now, on this idea that the infringement theory never changed, if you look at Mr. Beckwith's May 11th, 2006 letter, and again, Mr. Pearson suggests that somehow there was something wrong with Hyzotron not responding to this letter. The letter was sent the exact same day that the complaint was filed in the Northern District of California. But what Mr. Beckwith is saying here is that the frame of reference is focused on the nano-tensile Z stage and the NT head. Now, it's not entirely clear what that means, but the base, as the proposed construction from MTS, is not the nano-tensile Z stage and NT head. It is simply a frame of reference for measurement. It's not focused on anything specific. And again, one other point that I would like to make regarding this changing infringement theory. If you look at both the original and the first amended claim chart from MTS, they identified the base as the image, for example, on A734, as either A or A'. Neither A nor, sorry, A or A1. Neither A nor A1 is pointing to anything that could be construed as an abstract frame of reference. They are specifically pointing to the foundation and the frame of the device. With that, I'll thank the Court. Thank you, Mr. Babel. The case will be taken under advisement.